```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                        WESTERN DIVISION
```

JOHN H. MAGEE                                          PLAINTIFF

VS.                                        NO. 5:20-cv-147-DCB-MTP

NATIONSTAR MORTGAGE LLC                                DEFENDANT
d/b/a MR. COOPER

ORDER AND MEMORANDUM OPINION

This matter is before the Court on a Motion for Summary Judgment [ECF No. 41](the "Motion") filed by Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Defendant"). The Court having examined the Motion, the parties' submissions, the record, and the applicable legal authority, and being informed in the premises, finds as follows:

Background

In February 2008, John H. Magee ("Plaintiff") entered into a mortgage loan with Countrywide Bank, FSB, as lender. See Deed of Trust at [ECF No. 41-1]. The Deed of Trust was secured by real property located in Pike County, Mississippi.[1]  Ten months

---

[1] The Deed of Trust erroneously states that it secures property in Amite County, [ECF No. 41-1] at 2, but the legal description attached to the Deed of Trust describes real property located in

1

later in December 2008, Plaintiff filed for Chapter 7 bankruptcy, U.S. Bankr. S.D. Miss. 2008, Case No. 08:04005-NPO. Although Plaintiff elected in his bankruptcy schedules to reaffirm his debt with Countrywide Bank, 08-04005-NPO [Doc. No. 3] at 26, he never signed or filed with the bankruptcy court a reaffirmation agreement for the debt.  The bankruptcy court discharged his debts, including his Countrywide Bank debt, in April 2009, id. at Doc. No. 13, and Plaintiff began making voluntary post-discharge payments to avoid foreclosure.  [ECF No. 41-17] at 1.

   In 2013, the Deed of Trust was assigned to Defendant, [ECF No. 41-2], who began servicing the loan.  At some point in its loan servicing, Defendant began sending monthly "Informational Statements" to Plaintiff, which, according to Defendant, were required under federal laws.  [ECF No. 42] at 8.  These statements contained a payment coupon and disclaimer language that said it was not an attempt to collect a debt.  See

---

Pike County.  Id. at 7.  This error was later corrected in 2018 by a Scrivener's Affidavit.  [ECF No. 52-1] at 61.  Also, the legal description in the Deed of Trust omits a description of Plaintiff's manufactured home that was located on the mortgaged property and purchased with proceeds from the Countrywide Bank loan.  Complaint for Judicial Foreclosure, [ECF No. 41-10] ¶ 10; [ECF No. 52] ¶¶ 2,3.  A Default Judgment, dated 11/04/2019 and issued by the Chancery Court of Pike County in connection with the foreclosure proceedings described in this Order, reformed the legal description in the Deed of Trust to include the manufactured home description.  [ECF No. 52-1] at 58, 62.

Informational Statements dated 12/18/2018 through 11/19/2019, [ECF No. 41-14]. Plaintiff, however, believed the monthly statements to be bills. [ECF No. 52-5] at 8. Defendant's records indicate that Plaintiff missed his mortgage payment in August 2018 and made no further payments thereafter. [ECF No. 41-17] at 2.

About five months later in January 2019, Plaintiff's manufactured home caught fire, which resulted in a total loss. [ECF No. 52] at 2. The home was insured by Mississippi Farm Bureau Casualty Insurance Company ("Farm Bureau"), and the policy limit exceeded the remaining balance on Plaintiff's mortgage loan. Affidavit of Trevor Hightower, Farm Bureau District Claims Mgr., [ECF No. 52-2] ¶¶ 2-4, 13. Farm Bureau investigated the fire loss for approximately four months and determined that Plaintiff's policy covered the loss. Id. at ¶ 9. At various points from February 2019 through June 2019, Farm Bureau requested payoff statements from Defendant with limited success. Id. at ¶¶ 5-8, 10-18. Plaintiff also made repeated unsuccessful phone calls to obtain a payoff statement, which resulted in mounting frustration. See, e.g., Telephone call audio files [ECF No. 41-15]; [ECF No. 52-1] at 3-4.

On the morning of March 13, 2019, Plaintiff and the Farm Bureau adjuster, Trevor Hightower, spoke with Defendant by phone and confirmed to Defendant that Plaintiff's home had burned

3

down; they also requested a payoff. [ECF No. 52-1] at 5. Defendant advised in this phone call that the property was not in active foreclosure. Id. However, that afternoon, Defendant approved Plaintiff's account for foreclosure and, two days later, referred the account and a payoff statement to its foreclosure attorneys. Id. at 6-7. In May 2019, Defendant's attorneys filed a judicial foreclosure action. [ECF No. 41-10]. The foreclosure complaint erroneously named a deceased debtor and his wife (Plaintiff was alive and unmarried) and contained other factual errors. Id.; Amended Complaint, [ECF No. 15] ¶¶ 3-4. The Pike County Sheriff's Department attempted to serve the "wife" named in the foreclosure complaint and returned the summons with the notation "attempted to serve burnt house." [ECF No. 52-1] at 35-36.

Mr. Hightower of Farm Bureau received the final payoff quote from Defendant on June 11, 2019, and Farm Bureau forwarded a check for the full payoff amount to Defendant. Hightower Aff., [ECF No. 52-2] at ¶¶ 15-16. After obtaining Plaintiff's endorsement, Defendant negotiated the check on July 15, 2019, and deposited the proceeds in a hazard suspense account. Id. at ¶ 18; [ECF No. 41-17] at 3. According to Defendant, it attempted for months thereafter to get Plaintiff to complete and return an "Insurance Claim Packet", which would have informed Defendant whether Plaintiff intended to repair the property or

4

payoff the loan. [ECF No. 41-17] at 3-4. Plaintiff never complied. Id. at 4; [ECF No. 41-4] at 46-47.

Despite receiving and cashing the payoff check from Farm Bureau, the judicial foreclosure action proceeded, and Defendant added legal fees and force-placed insurance premiums on the destroyed home to the payoff amount. [ECF No. 52] at 7, 9. Plaintiff claims that Defendant charged $6,297.85 to his account after Defendant had received the full payoff amount from Farm Bureau, id. at 9, and Defendant counters that these amounts were ultimately charged off. [ECF No. 42] at 5; [ECF No. 56] at 115.

Defendant obtained a default judgment of foreclosure against "John H. Magee (Deceased) and Linda G. McGee" in November 2019 (Plaintiff never was served), posted sale notices at the Pike County Courthouse on November 7 and 13, 2019, and ran sale notices in the Enterprise Journal newspaper, which were scheduled for four successive weekly publications on November 13, 20, 27 and December 4, 2019. [ECF No. 52-1] at 58, 65, 73. Defendant asserts that it instructed its foreclosure attorneys to close the foreclosure file on November 19, 2019. [ECF No. 41-17] at 3. A foreclosure sale of Plaintiff's property did not occur.

In December 2019, Plaintiff's physician began treating Plaintiff with medication for clinical depression, which the

5

physician attributed to events subsequent to Plaintiff's fire loss and "his ongoing difficulties with his mortgage company." Affidavit of Lucius Lampton, M.D., [ECF No. 52-3] ¶¶ 7 & 9. Claiming damages for extreme mental and emotional distress and damage to his credit, Plaintiff filed suit against Defendant in the Circuit Court of Pike County, Mississippi, on May 14, 2020. See Complaint for Mortgage Negligence, [ECF No. 1-1]. Approximately two weeks later on May 28, 2020, one of Defendant's employees noted on Plaintiff's loan Communication History: "LOAN REVIEWED BY MANAGER … should have been paid off with Hazard funds June 2019."  [ECF No. 52-1] at 85.  Shortly thereafter, Defendant applied the insurance proceeds to Plaintiff's loan and charged off the balance.  [ECF No. 56] at 115.  At the end of June 2020, Defendant removed the state circuit court case to this Court on the grounds of diversity jurisdiction.  [ECF No. 1].

## Summary Judgment Standard

Summary judgment is appropriate, pursuant to Rule 56 of the Federal Rules of Civil Procedure, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.  Anderson v.

Liberty Lobby, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A party cannot defeat a properly-supported summary judgment motion by directing the Court to conclusory allegations or presenting only a scintilla of evidence. Lincoln v. Scott, 887 F.3d 190, 195 (5th Cir. 2018).

The evidence must be reviewed in a light most favorable to the nonmoving party. Vann v. City of Southaven, Miss., 884 F.3d 307, 309 (5th Cir. 2018); Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P., 627 F.3d 134, 138 (5th Cir. 2010). The Court neither assesses credibility nor weighs evidence at the summary-judgment stage. Wells v. Minnesota Life Ins. Co., 885 F.3d 885, 889 (5th Cir. 2018). Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## Legal Analysis and Discussion

As Defendant notes, Plaintiff's complaint does not include specific counts that lucidly set forth his claims and causes of action. Instead, his Amended Complaint reads: "13. The aforementioned actions of [defendant], its employees and/or

7

agents, resulted in the defendant being guilty of negligent infliction of emotional distress, wrongful attempted foreclosure, fraudulent[2], libelous, and grossly negligent[3]." [ECF No. 15] ¶ 13.  Without objection or comment from Plaintiff, Defendant interprets Plaintiff's claims to fall into three categories:  negligence, wrongful foreclosure, defamation.  [ECF No. 42] at 1-2.  Having considered the Amended Complaint, the Motion, and the parties' briefs and submissions, the Court concludes that Plaintiff has presented the following three claims in this lawsuit, each of which Defendant now argues should be dismissed on summary judgment:  (i) negligent infliction of emotional distress ("NIED"); (ii) wrongful attempted foreclosure; and (iii) defamation.  The Court will address each claim in turn.

---

[2] To the extent Plaintiff has attempted to state a claim for fraud, he has failed to do so with particularity as required under Federal Rule of Civil Procedure 9(b) and neither party has briefed such a claim in their submissions.  See Carroll v. Fort James Corp., 470 F.3d 1171, 1174 (5th Cir. 2006).  The Court deems this claim (assuming it was intended to be a fraud claim) waived and abandoned.  Keenan v. Tejeda, 290 F.3d 252, 262 (5th Cir. 2002)("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.").

[3] Other than the isolated reference in paragraph 13 of his Amended Complaint, Plaintiff makes no mention of gross negligence in either his complaint or his Response to Motion for Summary Judgment [ECF No. 52].  As with Plaintiff's solitary reference to fraud, see note 2 supra, the Court deems any claim for gross negligence to be waived and abandoned.

(i) Negligent Infliction of Emotional Distress

To state a claim for negligent infliction of emotional distress ("NIED"), a plaintiff must prove "the usual elements of duty, breach, causation and damages." Fouche v. Shapiro & Massey LLP, 575 F.Supp.2d 776, 788 (S.D.Miss. 2008). The difficult elements for Plaintiff to prove are, as Defendant suggests, duty and breach given the mortgagor and mortgagee relationship between Plaintiff and Defendant. [ECF No. 42] at 7; Poppelreiter v. GMAC Mortg., LLC, No. 1:11CV008-A-S, 2011 WL 6100440, at *3 (N.D. Miss. Dec. 7, 2011)(citing Merchants & Planters Bank of Raymond v. Williamson, 691 So.2d 398, 403 (Miss. 1997))("A relationship between a mortgagor and mortgagee is not a fiduciary one as a matter of law, but rather an 'arms-length business transaction involving a normal debtor-creditor relationship.'"); see also Huynh v. Phillips, 95 So. 3d 1259, 1262 (Miss. 2012) ("Duty and breach are essential elements of a negligence claim … ").[4]  Defendant argues that because all "the

---

[4] This Court faced a somewhat similar lender/borrower/rescinded foreclosure situation in Stewart v. GMAC Mortg., LLC, No. 2:10-CV-00149-DCB, 2011 WL 1296887, at *5–6 (S.D. Miss. Mar. 31, 2011) and concluded that a breach of duty claim should not be dismissed:
> Under Mississippi law, "every contract contains an implied covenant of good faith and fair dealing." *Merchants & Planters Bank of Raymond v. Williamson,* 691 So.2d 398, 405 (Miss.1997) (citation omitted). Good faith and fair dealing requires the "faithfulness of an agreed purpose between two parties, a purpose which is consistent with the justified expectations of

conduct complained of by [Plaintiff] was expressly allowed under the terms of the Deed of Trust, or required by federal regulation, [Plaintiff] can provide no evidence that [Defendant] failed to act with due care, an essential element of his claim." [ECF No. 42] at 7.  However, on this record of documentation errors and foreclosure mishandling, and given the fact that Defendant's own loan records disclose that the loan should have been paid off in June 2019 with the hazard suspense account funds, it is the Court's view that Defendant may have overstated its position.

Defendant further argues that Plaintiff's NIED claim fails because Plaintiff suffered no physical injury attributable to the actions of Defendant, which Defendant asserts is required

---

> the other party." *Cenac v. Murry,* 609 So.2d 1257, 1272 (Miss.1982). … [T]he allegations that Defendants' representatives promised to review Stewart's short sale proposals but instead foreclosed and failed to respond to them may constitute a breach of the duty of good faith and fair dealing. Though Stewart admits in the Complaint that Defendants rescinded the foreclosure within weeks of its occurrence which suggests that foreclosure was a mistake, it is premature for this Court to find that there are no circumstances under which Stewart could show bad faith here. … [N]umerous courts in Mississippi and the Fifth Circuit have refused to find a breach of the duty of good faith and fair dealing in ordinary lender/borrower disputes. … Nevertheless, the Court will not dismiss this claim.

Stewart, 2011 WL 1296887, at *5-6 (NIED claim dismissed on other grounds).

under Mississippi law for recovery on a NIED claim. [ECF No. 42] at 17. While recognizing some conflict in the cases regarding the injury requirement in Mississippi for a NIED claim, the Court believes a better explanation of the law is found in an opinion from this district, <u>Williams v. U.S. Bank Nat. Ass'n</u>:

> The standard for establishing a claim for NIED in Mississippi has never been fully settled. The primary dispute is whether a plaintiff must show an injury or some manifestation of harm. *See Edmonds v. Beneficial Miss., Inc.,* 212 F. App'x 334, 337 (5th Cir.2007) ("Mississippi law is unclear as to whether a physical manifestation of harm is required for negligent infliction of emotional distress cases."). … Where, as here, the defendant's conduct amounts to simple negligence, we take this opportunity to clarify that we have moved away from the requirement of proving some physical injury in addition to the proof of reasonable foreseeability. Our language in the previously cited cases, adopting the term "demonstrable harm" in place of "physical injury," indicates that the proof may solely consist of evidence of a mental injury without physical manifestation. *Adams v. U.S. Homecrafters, Inc.,* 744 So.2d 736, 743 (Miss.1999). "Even under the permissive standard, ... plaintiffs must still 'prove some sort of injury, whether it be physical or mental.' " *Edmonds,* 212 F. App'x at 337 (citing *Ill. Cent. R.R. Co. v. Hawkins,* 830 So.2d 1162, 1174 (Miss.2002)). And she must do so with " 'substantial proof' of emotional harm." *Id.*

<u>Williams v. U.S. Bank Nat. Ass'n</u>, No. 3:13CV439-DPJ-FKB, 2014 WL 847012, at *3-4 (S.D. Miss. Mar. 4, 2014). Considering the evidence of clinical depression that Plaintiff has submitted

11

from his treating physician, see Lampton Aff., [DK#52-3],[5] the Court finds that Plaintiff has presented sufficient proof of injury to survive summary judgment. The Court also finds on this record enough evidence of troubling and arguably negligent conduct on the part of Defendant to conclude that granting summary judgment on the NIED claim would be premature at this time.

(ii) <u>Wrongful Attempted Foreclosure</u>

Defendant argues that there is no cause of action for attempted wrongful foreclosure under Mississippi law, and Plaintiff's claim must therefore be dismissed as a matter of law. [ECF No. 42] at 11. The Court finds merit in Defendant's position. The key fact here is that a foreclosure sale of Plaintiff's mortgaged property never took place. As explained by a court in this district:

> Plaintiff has failed to cite any Mississippi law regarding a cause of action for *attempted* wrongful foreclosure. It does not appear that such a cause of action exists. The Mississippi Supreme Court has affirmed that there must actually be a foreclosure before a plaintiff can assert a claim of wrongful foreclosure. *See McKinley v. Lamar Bank,* 919 So.2d 918, 930 (Miss.2005). It is undisputed that Defendant

---

[5] Dr. Lampton attests: "As John Magee's treating physician, I noticed the increased severity of his anxiety and depression, as well as his worsening appetite and insomnia, and believe his worsening symptoms and continuing pharmacological treatment for depression resulted from his ongoing difficulties dealing with his mortgage company." Lampton Aff., [DK#52-3] ¶ 9.

12

> never foreclosed on Plaintiff's property, and Plaintiff has failed to point to any Mississippi law imposing liability for merely threatening foreclosure. Accordingly, the Court **grants** Defendant's Motion to Dismiss with respect to this claim.

Hutcherson v. JPMorgan Chase Bank, N.A., No. 2:11-CV-154-KS-MTP, 2012 WL 37393, at *4 (S.D. Miss. Jan. 6, 2012)(emphasis in the original), in reliance on McKinley v. Lamar Bank, 919 So.2d 918, 930 (Miss.2005)(where plaintiff's bankruptcy filing stopped the pending foreclosure proceedings, "[t]here was no wrongful foreclosure because there was never a foreclosure at all."); see also Taylor v. Ocwen Loan Servicing, LLC, No. 2:12-CV-107-SA-JMV, 2014 WL 280399, at *4-5 (N.D. Miss. Jan. 24, 2014)("Because Plaintiff fails to allege that a foreclosure sale has taken place, her claim for wrongful foreclosure must be dismissed."). The Court will grant Defendant's Motion with respect to Plaintiff's wrongful attempted foreclosure claim.

(iii) Defamation

The elements of defamation are: (1) a false and defamatory statement was made concerning the plaintiff; (2) there was an unprivileged publication to a third party; (3) the publisher was negligent in publishing the defamatory statement; (4) the plaintiff suffered damages resulting from publication of the defamatory statement. Mitchell v. Random House, Inc., 703 F.Supp. 1250, 1255 (S.D.Miss.1988), aff'd, 865 F.2d 664 (5th

13

Cir.1989); see also Gales v. CBS Broadcasting, Inc., 269 F.Supp.2d 772, 777 (2003).

Plaintiff argues that the publication of the default judgment against him, the posting of notices of foreclosure at the courthouse, and the publication of foreclosure notices in the newspaper defamed him because all of these "falsely stated that his loan was unpaid, and that it was necessary to sell his property to raise money to pay the note." [ECF No. 52] at 21.[6] This, according to Plaintiff, subjected him to public ridicule and embarrassment. Id. at 22. These notices were published in unprivileged communications to the general public, and third parties read the notices as evidenced by solicitation letters that Plaintiff received from at least three different foreclosure defense attorneys. Id. at 22; [ECF No. 52-1] at 75-77. Given that Defendant had on deposit in its hazard suspense account funds sufficient to pay the loan in full, Plaintiff argues that Defendant knew that there was no need to sell Plaintiff's land and the totally destroyed manufactured home to pay the loan note. [ECF No. 52] at 22-23. Publications indicating otherwise were false and the result of Defendant's

---

[6] Curiously, the notice of foreclosure stated: "Any foreclosure of this deed of trust will include the manufactured home situated thereon." Defendant knew that this statement was incorrect and that the manufactured home had been totally destroyed in a fire.

14

negligence.  Id.  Plaintiff points to his diagnosis of clinical depression, which his treating physician attributed to Defendant's conduct, as proof of the harm that he has suffered. Id. at 23; Lampton Aff., [ECF No. 52-3].

Defendant counters by arguing that the false statements about Plaintiff (e.g., that he was dead, married, and had children) do not rise to the level of "public hatred, contempt, or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community." Journal Publ'g Co. v. McCullough, 743 So. 2d 352, 360 (Miss. 1999). Defendant also argues that the "litigation privilege", Franklin Collection Serv., Inc. v. Kyle, 955 So. 2d 284, 292 (Miss. 2007), protects all words written in the foreclosure complaint and the foreclosure notices, but cites to no precedent that expressly extends the litigation privilege to protect all false statements in published foreclosure notices.  Indeed, the Mississippi Supreme Court case relied on by Defendant, Franklin Collection, did not endorse broad applications of the common law litigation privilege.  Id. at 293 ("[W]e reject Franklin's argument that any publications made in a legal pleading are absolutely privileged.").

Viewing the evidence in the light most favorable to Plaintiff -- as the Court must do at the summary judgment stage,

15

the Court is not persuaded for now that Defendant is entitled to summary judgment on the defamation claim.  The Court is not insensitive to the fact that Plaintiff was a debtor who had a history of missed payments and had been in default.  On the other hand, Defendant's own loan records indicate that the loan should have been paid off with the insurance proceeds in June 2019, which would have avoided any need for a judicial foreclosure proceeding and the publication of the allegedly negligent and defamatory notices.  [ECF No. 52-1] at 85.  The Court also is not persuaded that being subject to foreclosure does not diminish one's public esteem, as Defendant suggests. [ECF No. 42] at 13.  In sum, having carefully reviewed the record, the Court concludes that there may be facts for further development or clarification at trial and that the better course, at this time, is for the Court to refrain from granting summary judgment on the defamation claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.").

    ACCORDINGLY,

IT IS HEREBY ORDERED AND ADUDGED that Defendant's Motion for Summary Judgment [ECF No. 41] is GRANTED in part and DENIED in part as follow:

(i) Summary judgment is DENIED on the negligent infliction of emotional distress claim;

(ii)  Summary judgment is GRANTED on the attempted foreclosure claim; and

(iii) Summary judgment is DENIED on the defamation claim.

SO ORDERED AND ADJUDGED this 4th day of January 2022.


/s/   David Bramlette
UNITED STATES DISTRICT JUDGE